IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Jimmy G. Gilchrist, Sr., #242834, | ) | |
| | ) | C/A No. 6:06-1236-MBS |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| George T. Hagan, Warden of Allendale | ) | **O R D E R** |
| Correctional Institution; and Henry D. | ) | |
| McMaster, Attorney General of South | ) | |
| Carolina, | ) | |
| | ) | |
| Respondents. | ) | |

Petitioner Jimmy G. Gilchrist, Sr. is an inmate of the South Carolina Department of Corrections who currently is housed at Allendale Correctional Institution in Fairfax, South Carolina. Petitioner petitions this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

This matter is before the court on motion for summary judgment filed by Respondents on July 24, 2006. By order filed July 25, 2006, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to respond adequately. Petitioner filed a response on September 11, 2006.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to United States Magistrate Judge William M. Catoe for pretrial handling. The Magistrate Judge issued a Report of Magistrate Judge on January 31, 2007, in which he recommended that Respondents' motion for summary judgment be granted. Petitioner filed objections to the Magistrate Judge's Report on February 26, 2007.

The Magistrate Judge makes only a recommendation to this court. The recommendation has

no presumptive weight. The responsibility for making a final determination remains with this court. Mathews v. Weber, 423 U.S. 261, 270 (1976). The court is charged with making a *de novo* determination of any portions of the Report and Recommendation to which a specific objection is made. The court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or may recommit the matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

## I. FACTS

The underlying facts are set forth in the Report of Magistrate Judge and in the extensive record filed as attachments to Respondents' Return and Memorandum of Law in Support of Motion for Summary Judgment (Entry 14). Briefly, Petitioner and his brother-in-law, Ben Robertson, rode to a dance club near McCormick, South Carolina, the evening of June 19, 1996. At some point, Thomas Wideman, the Decedent, arrived at the club. Decedent's sisters, Vanessa Faye and Margaret, were present at the club as well. Around midnight, Decedent, his sisters, and two friends decided to sit in a car in the parking lot belonging to Decedent's friend, Johnny Lee Murray.

Petitioner left the club to purchase some cigarettes at a nearby convenience store. The car occupied by Decedent prevented Petitioner from moving his pick-up truck. Petitioner approached the passenger side of the car and made a comment about the car blocking his vehicle. Decedent, who was in the driver's seat, got out of the automobile and the men exchanged angry words. Petitioner contends Decedent flashed a gun at him. In any event, the other individuals restrained Petitioner and Decedent so that there was no physical altercation. Decedent moved the car and Petitioner pulled away from the parking lot. Shortly afterwards, Decedent, his friends, and his sisters went back inside the dance club.

2

Petitioner returned about twenty minutes later. Petitioner testified that he retrieved a weapon from his car and placed it in his pocket for protection. According to Petitioner, he and Decedent got into a confrontation as soon as Petitioner walked into the club. Petitioner testified that Decedent sat down on the side of a pool table and every thirty or forty-five minutes would lift his shirt, show Petitioner his gun, and point toward the door.

Other witnesses, including Decedent's sisters, dispute Petitioner's version of the facts. They testified that Decedent always wore his shirt tucked into his pants, and that Decedent was not in possession of a weapon that night. According to these witnesses, it was Petitioner who took a position along a wall and stared menacingly at Decedent for the next two hours.

When it was time for the club to close for the night, Petitioner approached Decedent and shot him once from close range. Decedent fell to the floor. Petitioner stood over Decedent and fired two more shots into his body. As Petitioner began to back away, Charles Freeman, an employee of the club, instructed Petitioner to surrender the gun, which he did. Petitioner thereafter drove off in his truck. Decedent died before he was transported to the hospital. No weapon was found at the scene. Petitioner turned himself in to law enforcement officers the next day.

Petitioner was indicted in McCormick County for murder. He was tried before a jury from July 28 to August 1, 1997. The Honorable William P. Keesley presided. Petitioner was represented by Thomas A. Mims, Esquire, a McCormick County Public Defender. Petitioner asserted that he shot Decedent in self-defense. According to his testimony, Petitioner had decided to approach Decedent to tell him they needed to end their confrontation before someone got hurt; however, as he did so, Decedent jumped up from his seat began reaching for a gun. Petitioner presented evidence that one of Decedent's friends, Kevin Jennings, had taken a gun off Decedent's body immediately

3

after the shooting. Specifically, Tabitha Reid, who had been at the club at the time of the incident, gave a statement to law enforcement averring that after the incident she was in the parking lot and Jennings "said he had the gun [Decedent] had on him." Entry 14-8, p. 58. Reid denied ever seeing the weapon. Later Reid amended her statement because she "recalled [Jennings] saying the gun came from the car [in which Decedent had been riding]." Id., p. 60.

Chief Deputy Claude Gable, Jr. investigated the crime. He testified that no one who was interviewed stated that he or she had seen a gun in Decedent's possession. Entry 14-5, p. 63. Gable testified that he heard "in the street" that a gun was taken off Decedent; but no one reported who took the weapon. Id., pp. 63-64. All of the state's witnesses testified that Decedent was unarmed. Sarah Cannady, who had been inside the club at the time of the shooting, testified, over objection, that Robertson stated to her about five minutes before the shooting that Petitioner was going to shoot Decedent. The trial judge found the statement to be an exception to the hearsay rule on the grounds that Robertson was a co-conspirator in the shooting of Decedent. See S.C. R. Evid. 801(d)(2)(E).

The medical examiner testified that Decedent presented with a short-sleeved shirt densely soaked in blood. The shirt had two bullet holes in the front and a series of bullet holes in the back. There was minimal downward directed blood. An entrance wound on the back of Decedent's right forearm had a pattern of powder particles, and it was determined that the bullet to the forearm had exited the arm, re-entered the chest, and then exited the back. This wound was consistent with a defensive movement of the arms to protect the chest. A second entrance wound to the chest had powder particles around it. That bullet traveled through the body and lodged in the back. A third entrance wound below the shoulder blade also had powder particles around. The third bullet went through the right lung, through the spine and aorta, passed through the left lung, and exited below

4

the armpit on the left side.  The medical examiner testified that it would be expected that a person would not be able to stand after a bullet had passed through the spine in this manner.  Based on this information, the state contended that Petitioner shot Decedent in the back first, severing his spine and causing him to collapse to the floor, whereupon Petitioner shot Decedent two more times in the chest.

At the close of Petitioner's case, the judge agreed to charge the jury as to murder, voluntary manslaughter, and self-defense.  With respect to self-defense, trial counsel submitted the following proposed instruction:

> The test is not whether there was testimony of an *intended* attack but whether or not the defendant *believed* he was in imminent danger of death or serious bodily harm, and he is not required to show that such danger actually existed because he had a right to act upon such appearances as would cause a reasonable and prudent man of ordinary firmness and courage to entertain the same belief.

Entry 14-9, p 107 (emphasis in original).   The trial judge declined to include the charge.  The trial judge opined that the law adequately was covered in his proposed charge, which provided, in relevant part:

> The defendant must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury, or the defendant must have actually been in such imminent danger . . . . If the defense relates to a belief by a defendant that he was in such imminent danger, the circumstances must have been such that a reasonably prudent person of ordinary firmness and courage could have entertained the same belief.

Additionally, trial counsel submitted the following request to charge:

> If a person is assaulted while in a club of which he is a member and without fault in bring[ing] on the difficulty[, h]e is not bound to retreat in order to invoke the benefit of the doctrine of self-defense, but may stand his ground and repel the attack with as much force as is reasonably necessary.

Entry 14-9, p. 110.  The trial judge refused to give the requested instruction.

Trial counsel also asserted that the court should include with its self-defense charge an instruction that the state has the burden of disproving beyond a reasonable doubt the defense of self-defense. Entry 14-9, p. 20. Trial counsel stated, "I don't know if the word defense itself that you have is going to make [the jury] understand enough that also [the state] need[s] to prove beyond a reasonable doubt in a self defense [situation]." Id., pp. 20-21. The trial judge disagreed, and determined adequate his charge that "the defendant doesn't have to prove anything at all, that the burden is entirely upon the state." Id., p. 21.

After the charge conference, counsel made their closing arguments to the jury. Significant to the within action, the solicitor made the following remarks:

> I submit to you that Jimmy Gilchrist was up a tree, not literally, of course. Figuratively he was up a tree. He had just shot and killed this man, . . . a defenseless man, and he had to come up with some alternative version of reality. He had nine hours, ladies and gentlemen, nine hours between cold-bloodedly killing this man here and turning himself in, nine hours to create the fiction that you all heard from him yesterday.
>
> . . . .
>
> He took away the daddy of these two small children. Why? Over an argument about a parking space. That's why. Don't think for a moment that the defendant isn't proud of his job that night. Remember do you remember him sitting there looking at that photograph? He's proud of himself. . . .
>
> . . . .
>
> . . . This bullet was dug out of the back of [Decedent]. Hold this bullet in your hands, ladies and gentlemen. Look at it. Look how jagged it is. Look out [*sic*] flattened it is. Think about where it's been.
>
> . . . .
>
> . . . Now, if you believe the defendant's story this right wrist was going for a gun reaching around. How is it that this bullet went through the wrist and on into the chest and then buried itself in the carpet? Now, is that possible? It's not. It's not

> possible because the shots occurred in the order I just described. First shot going
> through the body . . . .
>
>     . . . .
>
> Now, Mr. Mims talked about or used the phrase this could happen to
> anybody. Anybody could find themselves in this same predicament as Jimmy
> Gilchrist. Well, I submit to you that anybody could find themselves faced with
> Jimmy Gilchrist as [Decedent] did that night. Look at the results there. Faye
> Wideman doesn't have a brother anymore; she has a memory. Margaret Wideman
> doesn't have a brother anymore; she has a memory. What's going to be one of the
> memories of that family, the Wideman family? What's going to be one of the
> memories that these children are going to grow up with? These photographs. The
> three bullets that are arrayed right here in front of you on this witness stand, they
> have to deal with that for the rest of their life.

Entry 14-9, pp. 68, 71, 72, 74, 78.

The trial judge thereafter instructed the jury, among other things, that Petitioner was

presumed to be innocent and that the burden was upon the state to prove Petitioner's guilt beyond

a reasonable doubt. Entry 14-9, p. 82. The trial judge instructed the jury "that murder is defined as

the killing of any person with malice aforethought, either expressed or inferred." Id., p. 84. The trial

judge charged the jury that voluntary manslaughter is a lesser included offense of murder, and that

voluntary manslaughter "is the unlawful killing of a person in sudden heat and passion upon a

sufficient legal provocation." Id., p. 86. The trial judge also charged the jury the law of self-

defense:

> Now, the final broad concept I need to go over with you, ladies and
> gentlemen, is self-defense. The law recognizes the right of every person to defend
> himself from death or serious bodily harm at that hands of another. To do so, a
> person may use such force as is reasonably necessary or apparently so, even to the
> extent of taking the life of the assailant. In other words, self-defense is a complete
> defense. If self-defense is established, you must find the defendant not guilty.
>
>     . . . .

> Now, the last thing I need to go over with you on the law is this, ladies and gentlemen: the defendant is entitled to every reasonable doubt arising in the whole case or arising in any defenses. . . .

Entry 14-9, pp. 88-90.

After about two hours of deliberation, the jury asked to be re-charged on the law of self defense. Id., p. 95. After being reinstructed, the jury returned to its deliberations. About an hour later the jury found Petitioner to be guilty of the lesser included offense of voluntary manslaughter. The trial judge sentenced Petitioner to seventeen years imprisonment.

Petitioner filed a timely notice of appeal. Entry 14-10, p. 7. Petitioner was represented on appeal by Robert M. Dudek, Esquire of the South Carolina Office of Appellate Defense, and later by Robert T. Williams, Esquire. Petitioner requested counsel to raise a number of issues on appeal. However, appellate counsel determined to raise the following sole issue:

> Whether the judge erred by allowing Sara Ann Cannady to testify that Ben Robertson was overheard predicting that appellant would shoot the decedent, since there was no evidence Robertson and appellant were conspiring to kill the decedent, and no evidence Robertson's statement was made in furtherance of a conspiracy?

(Entry 14-10, p. 12.)

The supreme court determined that the trial judge had erred in admitting Robertson's alleged statement under S.C. R. Evid. 801(d)(2)(E) because there was no independent evidence of a conspiracy between Petitioner and Robertson, and the statement did not advance the conspiracy. However, the South Carolina Supreme Court determined that the error was harmless in light of the fact that Cannady further had testified, without objection, that Petitioner himself had made a statement indicating a pre-existing intent to kill Decedent. Accordingly, Petitioner's conviction and sentence were affirmed by the South Carolina Supreme Court by published opinion filed August 21,

8

2000.  See State v. Gilchrist, 536 S.E.2d 868 (S.C. 2000); Entry 14-10, pp. 32-35.

Petitioner, proceeding pro se, filed a petition for rehearing on September 5, 2000.  Entry 14-10, pp. 37-44.  The supreme court denied the petition by order filed September 21, 2000.  Remittitur was sent to the McCormick County Clerk of Court the same day.  Id., pp. 45-46, 36.

Petitioner filed an application for post-conviction relief (PCR) in state court on December 11, 2000, asserting the following grounds for relief:

10.A.  INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL.

1.)  Counsel was ineffective and prejudice me by failing to object and request that self-defense be on the verdict form.

2.)  Counsel was ineffective and prejudice me by failing to object to the testimony of Tabitha Reid testimony "that no one offered her a hand gun taken from the victim" after admitting the written testimony as evidence.

3.)  Counsel was ineffective and prejudice me by failing to object to the testimony of Deputy Gable (Chief Investigator) testimony at trial "that no one stated in their statement that there wasn't another gun involved" when he was the investigator who signed Tabitha Reid Statement as a witness.

4.)  Counsel was ineffective and prejudice me by failing to object that the prosecutor withheld exculpatory and impeaching evidence which violated Brady vs. Maryland.

5.)  Counsel was ineffective and prejudice me by failing to object to the prosecutor closing argument that was highly inflammatory and prejudice that was not based on evidence but emotion.

6.)  Counsel was ineffective and prejudice me by failing to research the type of conditions I was being sentenced to and the manner in which my sentence would be executed. . . . Had counsel researched the laws and facts in this area and told me that the conditions of my confinement and the manner in which my sentence would be executed, which were unconstitutional, I would have insisted on challenging the judge authority to sentence me.

9

7.)    Counsel was ineffective and prejudice me by failing to challenge the constitutionality of the sentence imposed and the judge authority to sentence me to a term of incarceration in the Department of Corrections, when it was clear at the time of sentencing that the conditions to which I was being sentenced were unconstitutional and the judge lacked jurisdiction to sentence me to an unconstitutional sentence or an unconstitutional condition of sentence.

8.)    Counsel was ineffective and prejudice me by failing to challenge the constitutionality of the statute that I was being sentenced under which states that my crime "is a felony punishable" by imprisonment . . . . Had my counsel informed me that there was no constitutional authority for punishment and that a sentence of punishment violated S.C. Constitutional Article XII § 2, I would have insisted on challenging the legality of the statutes and the judge's authority to sentence me under the statutes.

9.)    The accumulation of errors and ineffectiveness by counsel prejudiced me.

10. B.    <u>INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL</u>.

1.)    Counsel was ineffective and prejudice me by failing to challenge that the jury was wrongly instructed regarding the burden of self-defense, the jury instruction impermissibly shifted the burden to the defendant to show that he did not act with malice because he acted in self-defense which were objected to and preserve for the record and direct appeal.

2.)    Counsel was ineffective and prejudice me by failing to challenge the trial judge abusing his discretion by failing to direct a verdict when self-defense was established and as a matter of law should have aquitted the defendant based on the noted failure of proof, which were objected to and preserve for the record and direct appeal.

3.)    Counsel was ineffective and prejudice me by failing to challenge the trial judge abusing his discretion when he denied the defense motion to allow the jury to learn that the decedent was convicted in 1992 of carrying a concealed weapon, which were preserved for the record and direct appeal.

4.)    Counsel was ineffective and prejudice me by failing to challenge the trial judge abusing his discretion when he refused to allow the

10

defendant's counsel to comment on evidence in his closing argument that was waived by the state, which were preserved for the record and direct appeal.

5.) Counsel was ineffective and prejudice me by failing to challenge the closing argument of the prosecutor which were highly inflammatory and prejudice that it was not based on the evidence but on emotion and it caused the jury to lose sight and constituted for reasons other then the evidence, which were preserved for the record and direct appeal.

6.) Counsel was ineffective and prejudice me by failing to challenge the request for a new trial in which the trial judge denied, which were preserved for the record and direct appeal.

7.) Counsel was ineffective and prejudice me by failing to argue on his direct appeal that the statement admitted at his trial that Sarah Cannady attributed to Ben Robertson was not only hearsay but also violated the confrontation clause of the Applicant under the 6th and 14th amendment under the U.S. Constitution.

8.) The accumulation of errors and ineffectiveness by counsel prejudiced me.

9.) Counsel was ineffective and prejudiced me by failing to argue on this.

10 C.  THE MANNER IN WHICH THE STATE HAS PROSCRIBED THAT MY SENTENCE BE SERVED IS UNCONSTITUTIONAL.

Entry 14-10, pp. 47-74; 14-11, pp. 1-58; 14-12, pp. 1-23 (errors in original) .

A hearing was held on April 5, 2002 before the Honorable James R. Barber III.  Petitioner was represented by D. Ryan McCabe, Esquire.  On July 1, 2002, the PCR judge issued an order addressing four allegations of ineffective assistance that were asserted in the PCR hearing: (a) failure to request self-defense as an option on the verdict form; (b) failure to object to Tabitha Reid's testimony; (c) failure to impeach Claude E. Gable, Jr.'s testimony; and (d) failure to object to the solicitor's closing arguments at trial.  The PCR judge determined that Petitioner failed to submit any

11

probative evidence to satisfy his burden of proving that trial counsel rendered ineffective assistance of counsel in any regard. The PCR judge noted that trial counsel cross-examined each witness and made the appropriate objections. The PCR judge further determined that Petitioner's allegation that he received ineffective assistance of appellate counsel to be without merit. As to any other allegations raised by Petitioner, the PCR judge found that Petitioner failed to present any evidence regarding such allegations; therefore, the allegations were waived. The PCR judge denied the application and dismissed the case. Entry 14-12, pp. 24-29. The PCR Petitioner filed a notice of appeal on July 24, 2002. Entry 14-14, p. 54.

On August 2, 2002, Petitioner filed a pro se motion to alter or amend the order of dismissal. See S.C. R. Civ. P. 59. Entry 14-14, pp. 28-42. On September 4, 2002, the PCR judge denied Petitioner's motion on the grounds that (1) the motion was not timely; (2) Petitioner was represented by an attorney and was not entitled to hybrid representation; and (3) the court lacked jurisdiction because a notice of appeal was filed prior to the filing of the Rule 59 motion. Entry 14-14, p. 43.

Petitioner filed a motion to relieve counsel on or about October 10, 2002. Entry 14-14, p. 44-46. The South Carolina Supreme Court granted the motion on March 11, 2003. Entry 14-14, pp. 71-72. Petitioner thereafter filed a petition for a writ of certiorari in which he raised the following issues:

> 1.)  Did the post-conviction relief court err in finding that the Petitioner received effective assistance of trial counsel when counsel failed to object to the prosecutor closing argument that was highly inflammatory and prejudicial that was not based on evid. But emotion?
>
> 2.)  Did the post-conviction relief court err in finding that Petitioner received effective assistance of trial counsel when counsel failed to challenge the trial court lacked subject matter jurisdiction to sentence

Petitioner to an uncinstitutional [*sic*] sentence and challenge the constitutionality of the statutes under the South Carolina Constitution Article Twelve (12) subsection two (2)?

3.)    Did the post-conviction relief court err in finding that Petitioner received effective assistance of trial counsel when counsel failed to object to the perjury testimony of Deputy Gable (Chief Investigator)?

4.)    Did the post-conviction relief court err in finding that the Petitioner received effective assistance of appellate counsel when counsel failed to challenge on direct appeal the trial judge abusing his discretion when he denied the defense motion to allow the jury to learn that the Deceased was convicted in 1992 of carrying a concealed weapon?

5.)    Did the post-conviction relief court err in finding that Petitioner's appellate counsel were not ineffective in failing to argue on direct appeal that the trial judge erred by failing to instruct the jury that Petitioner did not have the burden of proving self-defense, that the state had to disprove self defense?

6.)    Did the post-conviction relief court err in finding that Petitioner appellate counsel were not ineffective in failing to comply with his request concerning the issues he wanted to address for direct appeal?

7.)    Did the post-conviction relief court err in finding that Petitioner's appellate counsel were not ineffective in failing to argue on direct appeal that the statement admitted at trial that Sarah Canady attributed to Ben Robertson was not only hearsay but also violated the confrontation clause of the Petitioner right under the . . . Sixth (6th) and Fourteenth (14th) Amendment of the United States Constitution?

8.)    Did the post-conviction relief court err in finding that Petitioner's appellate counsel were not ineffective in failing to argue on direct appeal that the trial judge erred in failing to give a requested charge, requested by defense counsel?

9.)    Did the post-conviction relief court err in finding that Petitioner's appellate counsel were not ineffective [*sic*] in failing to argue on direct appeal that the trial judge erred in only charging self-defense as set forth by this court in State v. Davis, 317 S.E.2d 452 (1984)?

10.)    Did the post-conviction relief court err in finding that Petitioner's appellate counsel were not ineffective in failing to argue on direct

>       appeal that the trial judge erred in directing a verdict based on the
>       noted failure of proof in favor of Petitioner[?]

Entry 14-17, pp. 1-27 (errors in original).

On June 23, 2004, the South Carolina Supreme Court granted the petition on the question of whether appellate counsel was ineffective for failing to raise issues regarding the adequacy of the self-defense jury charge and the refusal of the trial judge to give an appearances charge. Entry 14-19. Specifically, the questions presented were:

1.    Was appellate counsel ineffective for failing to appeal the trial judge's refusal to give an appearances charge?

2.    Was appellate counsel ineffective for failing to appeal the trial judge's refusal to charge immunity from retreat?

After briefing, the supreme court issued an opinion on April 25, 2005, affirming the PCR's denial of relief. See Gilchrist v. State, 612 S.E.2d 702 (S.C. 2005). As an initial matter, the supreme court noted that appellate counsel was not ineffective for failing to raise on appeal an issue that was not preserved for review. The supreme court further noted that an appearances charge is appropriate where the claim of self-defense arises from a mistaken appearance of danger. Because Petitioner's claim of self-defense did not rely on a mistaken appearance of danger, but rather upon his contention that Decedent actually was armed with a gun at the time of the shooting, appellate counsel was not ineffective for failing to argue this issue on appeal.

As to the immunity from retreat charge, the court noted that trial counsel's request was based on State v. Marlowe, 112 S.E. 921 (S.C. 1922), which involved a shooting at an Elk's Club. In Marlowe, the supreme court held it was error to refuse to charge that "the law of retreat does not apply to a club member when attacked by another in the club rooms" because "[a] man is not more

14

bound to allow himself to be run out of his rest room than his workshop." Id. at 922.  In Petitioner's action, the supreme court first noted that Petitioner was not a "member" of the dance club.  More importantly, the supreme court took the opportunity to overrule Marlowe, which elevated a club to the possessory status of a home or place of business, as against good public policy.  Petitioner's remaining issues were denied.

Petitioner filed a pro se petition for rehearing.  Entry 14-23, pp. 1-13.  The petition was denied on May 18, 2005.  Entry 14-24.  remittitur was sent to the lower court on May 18, 2005.  Entry 14-25.

Petitioner filed the within petition on April 26, 2006.[1]  He asserts the following grounds for relief:

> Ground one: Ineffective Assistance of Trial Counsel. . . . Trial counsel was ineffective for failing to (1) object to the prosecutor closing argument that was highly inflammatory and prejudicial (2) object to the perjury testimony of Deputy Gable.  By counsel not objecting prejudiced Petitioner which resulted in an unfair trial.

> Ground two: Ineffective Assistance of Appellate Counsel. . . . Appellate counsel was ineffective for failing to: (1) argue that the state had to disprove self-defense (2) comply with his request concerning the issue he wanted to address for direct appeal (3) argue that the statement admitted at trial violated the Confrontation Clause of the U.S. Constitution (4) that the trial judge erred in failing to give a requested charge requested by trial counsel (5) that the trial judge erred in only charging self-defense as set forth in State v. Davis, 317 S.E.2d 452 (1984).

> Ground three: Whether State Supreme court erred in finding that state did not have to disprove self-defense beyond a reasonable doubt. . . . Petitioner argued on writ of certiorari that the self-defense jury charge was fundamental unfair and shifted the burden from the state to Petitioner to prove that he did not act in malice, counsel requested that the jury be charged that the state had to disprove self-defense once it was established beyond a reasonable doubt.

---

[1] Although the petition was filed by the Office of the Clerk of Court on April 26, 2006, Petitioner was given the benefit of an April 18, 2006 "delivery" date pursuant to Houston v. Lack, 487 U.S. 266 (1988).

15

See generally Entry , pp. 6-9 (errors in original)

## II.  DISCUSSION

An application for a writ of habeas corpus with respect to a claim that was adjudicated on the merits in State court proceedings cannot be granted unless the adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  A determination of a factual issue made by a State court is presumed to be correct; Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  Id. (e)(1).

A.     Ground One - Ineffective Assistance of Trial Counsel

In ground one, Petitioner contends that trial counsel was ineffective (1) for not objecting to "highly inflammatory and prejudicial" statements made by the solicitor during closing arguments, and (2) for not objecting to the allegedly perjured testimony of Chief Deputy Gable.  To prove ineffective assistance of counsel, Petitioner must show that: (1) trial counsel's performance was deficient, and (2) the deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient when it falls below "an objective standard of reasonableness." Id. at 688.  An attorney's performance prejudices the defense when his errors are "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. at 687.

With respect to the allegedly inflammatory and prejudicial statements made during closing

arguments, the Magistrate Judge noted that a petitioner is not entitled to relief based upon the closing argument of a prosecutor unless the argument so infected the trial with unfairness as to make the resulting conviction a denial of due process. Report of Magistrate Judge, p. 22 (citing Donnelly v. DeChristoforo, 416 U.S. 637, 643-45 (1974)). The Magistrate Judge found that the solicitor's comments did not rise to this level and, as a consequence, trial counsel was not ineffective for failing to object to the statements. The Magistrate Judge therefore found that the PCR judge's denial of relief on this ground was not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

Petitioner's objection to the Magistrate Judge's determination reads:

> Trial counsel failure to object to the prosecutor's closing argument or counter the misconduct constituted ineffective assistance of counsel. As a result, the PCR court's denial of relief on ground one was contrary to and did involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(1)-(2); Campbell v. Polk, 447 F.3d 270, 274-75 (4th Cir. 2006).

Entry 33, p. 11.

The court need not conduct a de novo review when a party makes only general and conclusory objections that do not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations. Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir. 1982). Nevertheless, the court has reviewed the Magistrate Judge's thorough analysis and incorporates it herein by reference. Petitioner's objection is without merit.

With respect to the allegedly perjured testimony of Chief Deputy Gable, the Magistrate Judge noted that due process is denied if the government knowingly uses perjured testimony against the accused to obtain a conviction, and that the same result occurs when the government, "'although not

soliciting false evidence, allows it to go uncorrected when it appears.'" Report of Magistrate Judge, p. 28 (quoting Napue v. Illinois, 360 U.S. 264, 269 (1959)).  The Magistrate Judge further noted that, in order to meet his burden of proof, a defendant must show that perjured testimony was presented; that the prosecution knew the evidence was false; and "'there is any reasonable likelihood that the false testimony could have affected the judgment of the jury.'" Id. (citing Kyles v. Whitley, 514 U.S. 419, 433 n.7 (1995), Boyd v. French, 147 F.3d 319, 330 (4th Cir. 1998)).

The Magistrate Judge noted that trial counsel thoroughly cross-examined each witness.  The Magistrate Judge found no evidence that Deputy Gable withheld any information or that he committed perjury at trial.  The Magistrate Judge also determined that Petitioner failed to establish prejudice because there was no showing that a different approach to cross-examination would have been beneficial to the defense.  Accordingly, the Magistrate Judge determined that the PCR judge's denial of relief on this ground was not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

Petitioner contends that counsel was ineffective because he did not impeach Gable with Tabitha Reid's written statement wherein she first noted that Kevin Jennings "said he had the gun [Decedent] had on him," but later amended because she "recalled [Jennings] saying the gun came from the car [in which Decedent had been riding]."   Id., p. 60.  According to Petitioner, the jury would have altered its verdict had it possessed the opportunity to appraise the impact of Reid's written statement on Gable.  The court disagrees.  As the Magistrate Judge properly noted, there is no evidence that Gable's testimony was false.  Gable's comment at trial that he "heard on the street" and had "hearsay" evidence that Decedent was carrying a gun is not inconsistent with Reid's statement or other evidence presented at trial.  Moreover, the jury was aware of Reid's change in

18

position based upon trial counsel's cross-examination of this witness. The court discerns neither deficient performance nor prejudice. Petitioner's objection is without merit.

B.    <u>Ground Two - Ineffective Assistance of Appellate Counsel</u>

In ground two, Petitioner contends that appellate counsel was ineffective (1) for failing to argue that the state had to disprove self-defense; (2) for failing to raise on appeal the issues Petitioner wanted to address; and (3) for failing to argue a violation of the Confrontation Clause based on Sarah Cannady's testimony that Ben Robertson told her Petitioner was going to kill Decedent.

A defendant has a constitutional right to the effective assistance of appellate counsel. <u>Evicts v. Luce</u>, 469 U.S. 397, 396-97 (1985). In order to establish an ineffective assistance of appellate counsel claim, a defendant must demonstrate "that his counsel was objectively unreasonable in failing" to identify and argue an issue, and "a reasonable probability that, but for his counsel's unreasonable failure . . . , he would have prevailed on his appeal." <u>Smith v. Robbins</u>, 528 U.S. 259, 285 (2000). Reviewing courts must accord appellate counsel the "presumption that he decided which issues were most likely to afford relief on appeal." <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir.1993). Counsel is not obligated to assert all nonfrivolous issues on appeal, as "[t]here can hardly be any question about the importance of having the appellate advocate examine the record with a view to selecting the most promising issues for review." <u>Jones v. Barnes</u>, 463 U.S. 745, 752 (1983). Winnowing out weaker arguments and focusing on those more likely to prevail is the hallmark of effective appellate advocacy." <u>Id.</u> at 751.

With respect to Petitioner's allegation that appellate counsel was ineffective because he failed to raise a question regarding the burden of proving self-defense, the Magistrate Judge correctly noted that Petitioner was not entitled to the requested charge at the time he was tried. In <u>State v. Wiggins</u>,

19

500 S.E.2d 489, 544 (S.C. 1998), the South Carolina Supreme Court acknowledged that, at one time, self-defense was an affirmative defense in South Carolina, and a defendant bore the burden of establishing it by a preponderance of the evidence. The Wiggins court specified, for the first time, that current law required the state to disprove self-defense, once raised by the defendant, beyond a reasonable doubt. Id. In Wiggins, the supreme court cited with approval to the model self-defense charge articulated in State v. Davis, 317 S.E.2d 452 (S.C. 1984), and made mandatory in State v. Glover, 326 S.E.2d 150 (S.C. 1985). In State v. Addison, 540 S.E.2d 449 (S.C. 2000), the supreme court held that, for cases tried after Wiggins, a defendant who properly submits self-defense is entitled to a charge that the State bears the burden of disproving self-defense by proof beyond a reasonable doubt.

The Magistrate Judge found that Petitioner was not prejudiced by appellate counsel's alleged error, because he would not have been entitled to the requested instruction. The Magistrate Judge therefore found that the denial of relief on this ground was not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court.

Petitioner contends that the issue was preserved for appeal and should have been raised by appellate counsel. The court disagrees. In this case, the Davis charge was incorporated into the trial judge's jury instructions. Entry 14-9, 88-89. Because Petitioner's case was tried before Wiggins, the trial judge charged a correct statement of the law. It is axiomatic that failure to raise a meritless objection cannot serve as a ground for ineffective assistance of counsel. Bolender v. Singletary, 16 F. 3d 1547, 1573 (11th Cir. 1994). Petitioner's objection is without merit.

With respect to Petitioner's assertions that appellate counsel was ineffective (1) for failing

to raise specific issues identified by Petitioner, and (2) for failing to raise a Confrontation Clause issue, the Magistrate Judge determined that these issues are procedurally defaulted because Petitioner did not obtain a ruling on them by the PCR judge.  See Pruitt v. State, 423 S.E.2d 127 (S.C. 1992) (issues must be raised to and ruled on by the PCR judge to be preserved for review).   Petitioner objects on the grounds that he raised these issues in his pro se Rule 59 motion, which was denied as untimely. Petitioner essentially states that these grounds were defaulted because PCR counsel was ineffective for failing to timely file a Rule 59 motion.

A court can disregard a procedural default upon a showing of actual cause and prejudice.  See Wainwright v. Sykes, 433 U.S. 72 (1977) (barring federal habeas review of procedurally defaulted issues absent a showing of "cause" and "prejudice").   Ineffective assistance of counsel can serve as cause to excuse a procedural default.  See Clagett v. Angelone, 209 F.3d 370, 380 (4th Cir. 2000). However, Petitioner had no right to effective assistance of counsel in his PCR proceedings.  See Gilliam v. Simms, 133 F.3d 914 (4th Cir. 1998) (unpublished) (citing cases).   Accordingly, the alleged deficient performance of PCR counsel cannot establish cause to excuse his defaulted claims. See id.  Petitioner's objection is without merit.

C.    Ground Three - Self-Defense Charge

The Magistrate Judge construed ground three as raising the same issues discussed in Ground Two.  The Magistrate Judge found that the South Carolina Supreme Court's denial of relief on this ground was not contrary to and did not involve an unreasonable application of clearly established federal law as determined by the United States Supreme Court.  Petitioner asserts only a general and conclusory objection that does not direct the court to a specific error in the Magistrate Judge's proposed findings and recommendations.  See Orpiano v. Johnson, 687 F.2d 44, 47-48 (4th Cir.

1982).  Petitioner's objection is without merit.

* * *

It appears the Magistrate Judge made additional findings and recommendations to which Petitioner made no objection.  In the absence of objections to the Report, this court is not required to give any explanation for adopting the recommendation.  <u>Camby v. Davis</u>, 718 F.2d 198, 199 (4th Cir. 1983).

### III.  CONCLUSION

The court adopts the Report of Magistrate Judge and incorporates it herein by reference. Respondents' motion for summary judgment is **granted.**  Petitioner's § 2254 petition for a writ of habeas corpus is **denied**.

**IT IS SO ORDERED**.


/s/ Margaret B. Seymour
United States District Judge

Columbia, South Carolina

March 27, 2007.


**NOTICE OF RIGHT TO APPEAL**

Petitioner is hereby notified that he has the right to appeal this order pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.